\*JAMES W. DOGGETT v. THE RICHMOND & DANVILLE RAIL-
ROAD COMPANY.

*Injury to live stock by Railroad—Statutory presumption of
Negligence—Contributory negligence of Owner——Judge's
charge.*

1. In an action against a railroad company for killing or injuring live stock, the force of the presumption of negligence, under Bat. Rev., ch. 16, § 11, only applies when the facts are not known, or when from the testimony they are uncertain. When the facts are fully disclosed and there is no controversy as to them, the court must decide whether they make out a case of negligence; and when they fail to do so, the defendant can not be held liable,

2. If the owner of cattle permit them to stray off and get upon the track of a railroad and they are killed or hurt, the railroad company is not

---

\*Dillard, J., having been of counsel did not sit on the hearing of this case.

liable unless the train was being carelessly run, or by the exercise of proper care after the animals were discovered the injury could have been avoided or prevented.

3. Where, on the trial of an action against a railroad company for killing cattle, it appeared that on account of a heavy rain the cattle had sought a dry spot on the track near a trestle where they were killed in the night; the train was not shown to have been running with unusual speed, nor were the number and weight of the cars proved, although a witness (a brakeman on the train) stated that in his opinion it could not have been stopped by application of the brakes in less than half a mile; and it did not affirmatively appear that when the cattle were first seen the motion of the running train could have been arrested in time to avert the injury ; *Held*, that no blame could justly be attributed to the defendant.

4. In such case *it was held to be error*, for the court below to charge the jury "that if they believed from the evidence the defendant at the time of the killing was running a train which could not possibly be stopped within half a mile, this *of itself was negligence*, and would entitle the plaintiff to recover."

(*Herring v. R. R. Co.*, 10 Ire., 402; *Scott* v. *R. R. Co.*, 4 Jones, 432; *Aycock* v. *R. R. Co.*, 6 Jones, 231; *Battle* v. *R. R. Co.*, 66 N. C., 343; *Jones* v. *R. R. Co.*, 70 N. C., 626; *Clark* v. *R. R. Co.*, Winst., 109; *Pippen* v. *R. R. Co.*, 75 N. C., 54; *Proctor* v. *R. R. Co.*, 72 N. C., 579, cited and approved.)

CIVIL ACTION tried at Fall Term, 1878, of GUILFORD Superior Court, before *Kerr, J.*

This was an action to recover damages for killing cattle of the plaintiff. The defendant company admitted the value of the cattle, and that they were killed by being run over by an engine on its road. The testimony introduced on the trial, and the charge of the judge to the jury are sufficiently stated in the opinion of this court. Verdict and judgment for plaintiff, appeal by defendant.

*Mr. J. A. Gilmer*, for plaintiff.
*Mr. J. T. Morehead*, for defendant.

SMITH, C. J. This action is brought to recover damages

for the killing and injuring the plaintiff's cattle by the negligent management and careless running of a freight train over the defendant's road, in charge of its servants and employees, and within six months thereafter. The killing was admitted, and thereupon, to repel the imputation of negligence, the defendant introduced its brakeman, then on the train, who testified to the following facts: The witness had been in the defendant's service as fireman for the space of fourteen years and was on the train on the 16th day of June, 1876, when it ran over the cattle. The train was moving down an inclined plane and over a straight line of road a mile in length, with the steam shut off, when it came in contact with the cattle which were near a trestle spanning Reedy Fork branch, and on the track between eight and nine o'clock of that night. The night was dark and rainy and the head light in front of the engine would not enable the engineer to see an object more than thirty yards before him The witness was supplying wood to the furnace when the signal was given, and hastened to apply the brakes, but before he could do so, the cattle were struck by the engine. The momentum of the moving train of freight cars was such that in the opinion of the witness it could not be stopped by the application of the brakes in less than half a mile. The length of the train of cars and the speed with which it was descending are not stated. Much rain had fallen and the surface of the ground on either side of the track where the accident occurred was covered with water, as the owner testified, when he made an examination next morning.

Among other instructions not set out in the record, the court charged the jury "that if they believe from the evidence the defendant at the time of the killing was running a train which could not possibly be stopped within half a mile, this of *itself was negligence,* and would entitle the plaintiff to recover."

The rules of law require, in an action for damages result-
ing from the negligence of the defendant or his agents and
employees while engaged in his service, that the plaintiff
shall prove the negligence as a part of his case.   Where in-
jury to stock, straying off, is done by trains running at
night as well as by day, and known only to the defendant's
employees, this was an almost impossible requirement.
The owner would not know how, when, or by whom the
injury was done, while the servants of the road would pos-
sess full knowledge of the facts.   Hence the general assem-
bly enacted (Act of February 2nd, 1857,) that if the action
was prosecuted within six months, " when any cattle or
other live stock shall be killed or injured by the engines or
cars running upon any railroad, it shall be *prima facie* evi-
dence of negligence on the part of the company in any suit
for damages against such company," (Bat. Rev., ch. 16, § 11)
thus shifting the burden of proof from the plaintiff to the
defendant, and requiring the latter to show the circum-
stances and repel the legal presumption.   But where the
facts are fully disclosed, and there is no controversy as to
them, the court must decide whether they make out a case
of negligence, and if they fail to do this, the defendants are
not to be held liable.   Such we understand to be the pur-
pose and effect of the statute, and that, all the facts appear-
ing, the defendant is charged or acquitted, as negligence
appears or is disproved.   The cases where action has been
brought for injury to stock from moving railway trains are
numerous, and are collected and discussed by Mr. Redfield
(1 Red., Railw., ch. 18,) and the rule of liability extracted
therefrom seems to be this : If the owner permits his cattle
to stray off and get upon the track, and they are killed or
hurt, the company is not liable unless the company were
carelessly running the train, or could by the exercise of
proper care, after the animals were discovered, have avoided
or prevented the injury.   In other words, the company is

not required to abate the usual and safe speed of their trains, lest there may be cattle on the road which may be killed or injured; and if a proper look-out is kept up, and all reasonable efforts made when the obstruction is seen, to avoid the accident, the company is exempt from responsibility, and the injury is ascribed to the contributory negligence of the plaintiff, in permitting his stock to roam about and get on the road.

In the present case, the evidence shows that much rain fell during the night, and the water overflowing the ground the cattle had sought a drier spot, near the trestle, and there they were found next morning by the owner. The train is not shown to have been moving with unusual speed, nor were the number and weight of the cars constituting it proved, and hence we cannot see how great was the momentum, which prevented an arrest of its motion until it had run over a half mile or more of the road. There is no apparent negligence in this, and it does affirmatively appear that when the cattle were first seen as white objects on the road within the distance of thirty yards, the motion of the running train could not be arrested, if the force had been applied to the brakes in time, to avoid the collision. We can see no blame justly attributable to the persons managing the cars.

The railroad system, traversing the country in all directions, contributes largely to the development of its agricultural, commercial and other resources, and this result is attained mainly by the certainty, regularity and rapidity with which the trains move, and transportation is effected. These advantages are transferring a large bulk of the freights from water to this mode of internal land conveyance, and though occasional injury may be done to stock, allowed to stray upon the road-bed, this inconvenience is greatly outweighed by the benefits conferred upon the whole country by railway transportation, and it would be an unwise policy

to hamper the latter and diminish its usefulness by needless restraints. We do not in the present case discover evidence of such culpability in running or conducting the train as should subject the defendant to liability to the plaintiff for the loss of his cattle. It is certainly not the fault of the former that they had sought and found a resting place upon the track, nor would any care or effort have been availing to avert the injury when they were first seen. It is the interest, not less than the duty of those in charge of moving trains, to avoid, whenever it can be done, any obstruction found upon the road, since it endangers the safety of the train itself and the persons and property upon it, and not less the persons in charge than others, and a much higher duty is owing to those to convey them safely.

Now the instruction of the court in substance is that the inability to arrest the progress of a running train, in a less space than half a mile, whether the speed of its motion was fast or slow or whether that fact could in any manner be the cause of the mischief, made the defendant responsible. In this we do not concur, because it leaves out of view the direct casual agency by which the damage was done, and, as the proof is, did not contribute to the result. We propose to examine the cases decided in our own court on the subject.

In *Herring* v. *R. R. Co.*, 10 Ire., 402, the action was to recover damages for a slave run over and killed by the defendant's train on Sunday afternoon. The slave was asleep on the track, the day clear, and the road straight for a mile or more. The slave could be seen for half a mile according to some witnesses, and for two hundred yards only, according to others. The train was passing at the usual hour and the attempt to arrest the motion was not made until the cars were near the slave, and was successful only when it had passed over him. The court held there was no negli-

gence and the defendant was not responsible for the acci-
dent.

In *Scott* v. *R. R. Co.*, 4 Jones, 432, the plaintiff's cow was
killed in the day time by the train moving at the usual
rate of twenty miles an hour, at a place where the road was
straight and the cow could be seen a mile distant. PEAR-
SON, J., says : " In the case of *Herring* v. *R. R. Co.*, the facts
were nearly the same as are presented in this case, with this
difference: there, the property destroyed was a slave; here,.
it was a cow. It was held in that case that the facts did
not show negligence on the part of the defendant. We con-
sider that holding decisive of this case."

In *Aycock* v. *R. R. Co.*, 6 Jones, 231, the cattle killed were
feeding on either side of the road, and some in the act of
crossing it, where it was straight and they could be seen half
a mile, when the train being behind time was running at
an accelerated speed, struck and killed one of them, and no
whistle was blown to drive it from the track. The court
imputed negligence to the defendant in the failure to use
the whistle, the ordinary means of driving stock from the
track.

The facts in these cases occurred before the passage of the
act of February 2nd, 1857, and the decisions were governed
by the common law. We now propose to examine those
made since the passage of the statute.

In *Battle* v. *R. R. Co.*, 66 N. C., 343, actual negligence was
imputed to the company in leaving their cars upon a grade
in the road that passed through enclosed pasture lands of
the plaintiff, " the upper car being chocked with a stick of
wood." The lower car somehow became detached, and run-
ning down the declivity, killed the mule. " Independent of
the legal presumption," say the court, " the evidence in this
case showed gross negligence on the part of the agents of
the company."

In *Jones* v. *N. C. R. R. Co.*, 70 N. C., 626, the plaintiff's

30

horse was struck by a freight train, soon after sun-rise, while descending a slight down-grade, straight for a half mile or more, so that the animal could have been seen that distance. The horse had run ahead of the train at a rapid pace for some two hundred yards, and was in his owner's field. The court say : " There was nothing to prevent the engineer from seeing the horse, and therefore it is to be taken that he did see him. The alarm whistle was not blown at all, and the whistle for the brakes was not sounded until about the place where the train struck the horse, whether just before or just after striking, does not appear. We agree with His Honor that *this was negligence.*"

In *Clark* v. *R. R. Co.*, Winst., 109, the statutory presumption is held to prevail until rebutted by showing the exercise of due diligence would not have prevented the accident.

In *Pippen* v. *R. R. Co.*, 75 N. C., 54, the mules were stricken and rendered valueless by the defendant's train moving at the usual speed of twenty miles an hour and on schedule time, in the night season. The mules ran in front of the engine on the road a distance of over two hundred yards, could have been seen at seventy-five yards, and in that space the train could have been stopped. But in fact, the mules were not discovered until within thirty feet of the train, and then every effort was made, but failed, to arrest its motion. This was held to be a case of actual negligence. The language of the court in the opinion in regard to the force of the statute is very strong in saying the defendant must show "there was no neglect whatever," and " that there was not only such rebutting evidence offered, but without the aid of the statute, it would seem that the plaintiffs are entitled to recover." The facts here also disclosed actual negligence.

In *Proctor* v. *R. R. Co.*, 72, N. C. 579, the plaintiff's cow jumped upon the track, at the opening of a cut, about two hundred yards in front of a train moving at the speed of twenty-three miles an hour, and incapable of being stopped

under four hundred yards, and the engineer, as soon as he discovered her, blew the alarm and the brakes were applied, but not in time to prevent the injury. The court declared upon these facts that there was no negligence on the part of the defendant's agents, and the company was not liable to the plaintiff for his loss.

We think the cases do not conflict with our own reasonable construction of the act, and that this construction is calculated to secure all its intended benefits to those whose property is destroyed or injured in their absence by railway trains, without doing injustice to the company; and that when all the facts and circumstances of the accident are shown, the law itself will raise or refuse to raise the inference of neglect, upon which the liability of the company depends. The force of the presumption only applies when the facts are not known, or when from the testimony they are uncertain. In such cases the statute turns the scale and fixes the responsibility, and not when all the facts are well established. This seems to follow from the principle that negligence is a question of law, to be decided by the court upon admitted or proved facts, and thus the law is uniformly and consistently administered. There is error.

Error. *Venire de novo.*