D. T. DURHAM v. WILMINGTON & WELDON RAILROAD COMPANY.

.    *Killing Stock—Statutory Presumption—Negligence.*

The act of 1857, (Bat. Rev., ch. 16, § 11,) which makes the act of killing stock by the engines or cars of a railway company *prima facie* evidence of negligence, applies only when the facts attending the killing are unknown and uncertain ; but when those facts are fully disclosed in evidence, and it is *shown* that the defendant company adopted every precaution in its power to avert the injury, the court should instruct the jury that the defendant is not chargeable with negligence.

(*Proctor* v. *R. R. Co.*, 72 N. C., 579 ; *Doggett* v. *R. R. Co.*, 81 N. C., 459, cited and approved )

CIVIL ACTION tried at Fall Term, 1879, of PENDER Superior Court, before *Eure, J.*

The plaintiff brought this action to recover damages of the defendant company for alleged negligence in killing a mule, the property of plaintiff. The facts of the case are substantially set out in the opinion of this court. His Honor intimated that the defendant had rebutted the presumption of negligence, if the facts should be found as stated by the witnesses, and in deference thereto the plaintiff took a nonsuit and appealed.

*Mr. A. T. London,* for plaintiff:

The act of 1857 (Bat. Rev., ch. 16, § 11,) which makes the fact of killing *prima facie* evidence of negligence on the part of defendant, was intended as a protection to owners of cattle, and is in pursuance of the general policy of the state in regard to stock, which are allowed to run at large and are protected by various statutes and decisions. Rev. Code, ch. 38 ; Bat. Rev., ch. 16 ; *Burgwyn* v. *Whitfield,* 81 N. C., 261 ; 7 Jones, 468 and 555. Defendant company cannot acquit itself except by showing there was no neglect whatever. *Clark* v. *R. R. Co.,* Winst., 109 ; *Pippen's* case, 75 N. C., 54. The counsel commented upon *Doggett's* case, 81 N. C., 459, and *Proctor's,* 72 N. C., 579.

*Messrs. D. J. Devane, Junius Davis* and *Stedman & Lattimer,* for defendant:

Notwithstanding the act of 1857, the plaintiff can no more recover in such case, when he has been guilty of contributory negligence, than he could before the passage of the act. *Forbes'* case, 76 N. C., at page 457. It was the duty of the court to say, if the witnesses were to be believed, whether or not the defendant was guilty of negligence. *Doggett's* case, 81 N. C., at page 462 ; *Manly's,* 74 N. C., 658 ; *Proctor's,* 72 N. C., 579 ; *Scott's,* 4 Jones, 432.

SMITH, C. J. The passenger train of the defendant company left Wilmington at the usual hour and was proceeding north on the night of February 13, 1879, at the usual speed of twenty-eight miles an hour and on schedule time, when the fireman, on the lookout, a little after 9 o'clock, observed some object on the track a few yards ahead and at once gave notice to the engineer in charge. The steam throttle was immediately closed and the brakes applied, but before the alarm signal could be blown, or the progress of the moving train perceptibly diminished, it struck and killed the plaintiff's mule. It had been raining and the night was dark

23

and foggy.   By the head-light of the engine no obstruction
on the track could be seen at a greater distance than twenty
yards in advance.   A train running at the rate of twenty-
five or thirty miles an hour could not be brought to a stand-
still short of about three hundred yards, and would require
less than two seconds to pass over twenty yards.

No omitted duty on the part of the agents of the company
in charge of the train is suggested, nor negligence in the
employment of any available means by which the injury
could have been avoided.   The train was moving in its
usual manner, the fireman with vigilance stimulated by the
darkness of the night and consequent danger, is on the
look out and discerns the obstruction the moment it be-
comes visible.   The engineer is at his post and responds
promptly to the first notice of its presence by shutting off
steam and causing the brakes to be applied, and in a mo-
ment, before the whistle can be blown, the mule is stricken
and killed.   In the language of SETTLE, J., in a case not
dissimilar, "what more could have been done?   Nothing
that we can see unless the road had been required to fence
the track.   Railroads are very properly held to a rigid ac-
countability; but they are of great public benefit and should
not be subject to such unreasonable restrictions, as would
destroy or greatly impair their usefulness."   *Proctor* v. *R.
R. Co.,* 72 N. C., 579.

The responsibility of railroad companies for injuries to
stock, straying upon their track, and the care and diligence
required in the management of running trains, have fre-
quently been before the court, and were fully discussed in
*Doggett* v. *R. R. Co.,* 81 N. C., 459.   It is of the highest im-
portance that the law should be settled and understood, and
we are not disposed to review and disturb that decision.   We
then declared that the force of the statutory presumption of
negligence "applies when the facts are not known, or when
from the testimony they are uncertain.   In such cases the

statute turns the scale and fixes the responsibility, and not when all the facts are well established. This seems to follow from the principle that negligence is a question of law to be decided by the court upon admitted or proved facts, and thus the law is uniformly and consistently administered.' It would be an inconsistent proposition to allow a presumption, raised in the absence of evidence, to prevail over the deduction which the law itself makes from the facts proved, and render the presumption insuperable. Our construction of the act secures to those for whose benefit it was intended, adequate and ample protection to their rights of property and leaves the company in the enjoyment of its franchise and the discharge of its duties to the public.

In the plaintiff's brief, it is intimated that the company should enclose its track with a fence, and the want of this is a negligence for which it is liable. Without adverting to the public inconvenience of having such obstructions at every highway crossing, and in the towns through which the track passes, it is sufficient to say that this is not required by law and hence the company is not in default in this regard. Nor do we think the company should abate its usual speed on account of the obscurity of the night, though the vigilance of its officers and agents should be quickened on such occasions, since the running of its trains out of schedule time is attended with greater perils and is fruitful of disasters.

There is no error and the judgment is affirmed.

No error.                                            Affirmed.