### THE STATE v. J. F. DIVINE.

*Constitution—Statute—Presumption of Innocence—Special Verdict.*

1. A special verdict must find the defendant guilty or not guilty, subject to the opinion of the Court upon the law as applicable to the facts ascertained therein.

2. A statute which deprives a person charged with a criminal offence of the presumption of innocence, or makes acts within certain localities, done by a particular class of individuals, criminal, when others in the same vocation and other sections under like conditions are exempt, is in violation of the Constitution.

3. The statute (*The Code*, §§2327–2330,) making the killing of cattle upon railroads in certain counties a misdemeanor, and subjecting the president, superintendent, and others officers of such roads, to indictment if they refuse to pay for or refer to arbitration the claim for compensation for such cattle, is unconstitutional.

(*State* v. *Padgett*, 82 N. C., 544, and *Doggett* v. *Railroad*, 81 N. C., 459, cited.

This was a CRIMINAL ACTION, tried before *Clark, Judge,* at January Term, 1887, of ROBESON Superior Court.

The prosecution of the defendant commenced by warrant, issued by a justice of the peace of Columbus county, and tried by him, charges the defendant, as Superintendent of the Wilmington, Columbia and Augusta Railroad Company, with a personal criminal responsibility, for the running over and killing two cows, the property of J. C. Powell, the prosecutor, by a train moving over its track, on May 19th, 1886. The proceeding is instituted under the act of 1880, ch. 13, which is brought forward, and constitutes the four last sections, 2327, 2328, 2329, 2330, of chapter 10 of Vol. II of *The. Code.*

The enactment is in these words :

" When any cattle, horses, mules, sheep or other live stock

shall be killed or injured by any car or engine running on any railroad in the counties of Columbus, New Hanover, Brunswick, Bladen, Robeson, Richmond, Anson, Union, Gaston, Lincoln, Cleveland and Burke, it shall be a misdemeanor; and the president, receiver and superintendent of such road, and also the engineer and conductor in charge of the train or engine by which such killing or injury is done, may be indicted for such killing or injury: *Provided,* if the parties indictable under this section shall, within six months after the killing as aforesaid of any stock mentioned in this section, and before any indictment is preferred or warrant issued, pay the owner of such stock as may be-killed his charges for said stock, or in the event the charges are too high, or thought to be so, such sum or sums as may be assessed by three commissioners—one to be chosen by the party whose stock is killed or injured, a second by the party accused of killing the same, and the third by the two commissioners chosen as above indicated, who shall meet at some place in the county where the stock is killed or injured, to be selected by the parties interested—within thirty days after they are chosen and accepted, such payment shall be a bar to any prosecution under this section; and the decision of two of said commissioners shall be final for the purposes of this section: *Provided further*, if any person or persons liable to indictment under this section shall, within the time prescribed, propose to the party endamaged to refer the matter of damages in the manner hereinbefore indicated to three commissioners, and the party endamaged shall refuse or decline such proposition, such refusing or declining shall be a bar to any prosecution under this section: *Provided also*, if the party endamaged shall, at any time before the indictment is preferred, or warrant issued, directly or indirectly, receive any sum in full compensation of his damages, such compensation shall be a bar to any prosecution under this section; and if any compensation be so received after indict-

ment is preferred or warrant issued, or if after said time the party accused shall pay or tender to the owner of the stock killed the value of the same, as decided by the commissioners, as above provided—in either case the prosecution shall go no further, and the accused shall be charged only with accrued cost."

The second section prescribes the punishment by "fine not exceeding fifty dollars, or imprisonment not longer than thirty days."

The third provides that "when stock is killed or injured by a running engine or car in the counties enumerated, it shall be *prima facie* evidence of negligence on the trial of the indictment."

The fourth section declares that the indictment against the officers of railroad companies shall not lie " until a proposition to refer the matter has been proposed by the party claiming that he has been damaged."

Upon an appeal t.· the Superior Court from the judgment rendered against the defendant by the justice of the peace, a special verdict was found by the jury in these words: "The cattle were killed by the cars of the Wilmington, Columbia and Augusta Railroad · Company as alleged, under the following circumstances, to-wit: That at the time of the killing it was a bright moon-light night, about 10 P. M.; that the train was on schedule time, running at the rate of forty miles per hour; that the cattle could have been seen at least one hundred yards ahead of the train ; that the cattle were not seen by the engineer until struck by the train; that the cattle were the property of J. C. Powell; that the corporation owning the road is the same which was chartered by the act of March 1st, 1870, as the Wilmington and Carolina Railroad Company; that the defendant is the superintendent of the said Wilmington, Columbia and Augusta Railroad Company; that the said company refused to refer the matter to arbitration; that the defendant, J. F. Divine,

was not on the train that did the killing, and was in no way connected with said killing."

The Court, being of opinion that the defendant was not guilty, adjudged that he go without day, and the Solicitor appealed.

*The Attorney General,* for the State.
*Mr. Geo. Davis* (by brief) for the defendant.

SMITH, C. J., (after stating the case). The special verdict stops without the essential finding, that the accused is or is not guilty, as in the opinion of the Court, upon the recited facts, they constitute or do not constitute the criminal act charged. The question of the defendant's guilt is to be decided, under his plea, alone by the jury in cases requiring a jury, and these include all criminal accusations, except in certain petty misdemeanors, by express provision of the Constitution, Art. I, Sec. 13.

The special verdict, to be sufficient, must find, subject to the opinion of the Judge upon the law, the defendant guilty or not guilty, or it is legally no verdict at all. *State* v. *Padgett*, 82 N. C., 544, and cases cited in the opinion.

The proper course, then, would be to set aside the finding and direct a *venire de novo* in the Court below, unless it can be seen, upon the face of the proceedings, that the prosecution cannot be successfully maintained; and this is the defence set up on behalf of the accused.

It is insisted that the facts charged in the warrant do not constitute a criminal offence, and cannot be made such under the act, without infringing upon the provisions of the organic law, and taking from the accused some of the immunities and personal securities which it contains for the protection of the citizen against the exercise of legislative power.

The objections to the validity of the legislation are pointed out and forcibly presented in the brief of defendant's coun-

sel, with an array of numerous rulings in their support, as follows:

1. In its whole structure and manifest purpose it creates out of a *private civil injury* a *public prosecution*, to subserve the interests of the injured party, and to be put in operation or arrested at his instance and election.

2. It assumes a criminal liability to have been incurred by an officer of a railroad corporation, *without his concurrence* in the act of the subordinate, and, assuming negligence and guilt, puts him on the defensive, and requires him to repel the presumption, when he in no manner participated in what was done.

3. It undertakes to drive the accused to an adjustment of the claim for damages by assenting to a reference to arbitration, and to deprive him of his constitutional right to be tried in the Courts of the State—tribunals provided under the Constitution—and by a properly constituted jury, acting under a Judge.

4. It places at the election of the claimant the institution of the prosecution, which otherwise is suspended, by making a proposition for a reference.

5. It discriminates, without apparent difference, between counties and railroads, giving partial operation to a law, general in its provisions and equally applicable to all, by which the same act is rendered criminal in one locality which is not so in another, and raising out of an act done by one employee a presumption of guilt against another employee, who did not, in any way, participate in it.

We do not perceive any difficulty in the act of 1856–'57 (*The Code*, §2326,) raising a presumption of negligence on the part of the company from the fact of killing or injuring stock, in a civil suit for reparation, brought within six months thereafter, as is explained in the opinion in *Doggett* v. *Railroad*, 81 N. C., 459, and whose validity has not been questioned in the numerous cases which have been before

the Court.   But the present case passes far beyond the limits of that enactment, in fastening a *criminal* responsibility, not upon the principal whose agent does the injury, but upon a co-employee in the same general service, and this not upon all, but specially upon railroads that run through or in particular counties.

We do not say that there may not be local legislation, for it is very common in our statute books, but that an act divested of any peculiar circumstances, and *per se* made indictable, should be so throughout the State, as essential to that equality and uniformity which are fundamental conditions of all just and constitutional legislation.

Looking at the indictment it will be seen that the only material allegations are, that the prosecutor's cattle were killed by a moving train on the road of the company of which the defendant is superintendent, without connecting him with the act; and scarcely more definite is the special verdict.

Do these words impute crime, and upon mere proof of these facts is the charge established, and must the defendant be convicted unless he repels the negligence which the statute presumes in the subordinate employed in managing the train?   The very question involves an answer, unless all the safeguards thrown around one accused of crime are disregarded, and he left without their protection.

The defendant was not on the train when the accident occurred, and has no personal relation to it except such as results from his position as a higher officer of the road—making the offence one by construction.

Judge COOLEY, in his work on Constitutional Limitations, at page 309, referring to a trial for criminal offences of different grades, uses this impressive language: " The mode of investigating the facts, however, is the same in all, and this is through a trial by jury, surrounded by certain safeguards, which are a well understood part of the system, and which

the government *cannot dispense with*," meaning, as we understand, that the charge must go before the jury, and the guilt of the accused proved to them, with the presumption of innocence until this is done.

In *Cummings* v. *Missouri*, 4 Wall., 328, Mr. Justice FIELDS, referring to certain enactments in that State, says: "The clauses in question subvert the presumption of innocence, and alter the rule of evidence which, heretofore, under the universally recognized principles of the common law, have been supposed to be fundamental and unchangeable."

"But I have no hesitation in saying," remarks SELDEN, J., in *Wynehamer* v. *The People*, 13 N. Y., 446, "that they (the Legislature) cannot subvert that fundamental rule of justice which holds that every one shall be *presumed innocent until he is proved guilty.*"

The case is not analogous to that wherein for civil purposes negligence is inferred from the fact of killing stock, and requiring matters in excuse to be shown, which lie peculiarly within the knowledge of the agent who perpetrated the act, or controls the running of the engine when it is done; nor to the statute (*The Code*, §1005,) which makes the having about the person one of the deadly weapons forbidden to be carried, or worn, *prima facie* evidence of concealment, for this is the sole personal *act of the party*, of the consequences of which he is aware, and because a small weapon, if concealed, would be almost impossible of proof direct, while the possession of such is intimately and naturally connected with the secret carrying and furnishes strong evidence of the fact.

In *San Manteo* v. *Railroad*, 8 Am. & Eng. R. R. Cases, 10, in construing the Fourteenth Amendment to the Constitution of the United States, it is said: "Whatever the State may do, it cannot deprive any one within its jurisdiction of the equal protection of the laws. And by equal protection of the laws is meant equal security under them, by every

one on similar terms in his life, his liberty, his property and in the pursuit of happiness."

Substantially the same doctrine is announced, and by the same eminent Judge (Mr. Justice FIELD) in *Barbier* v. *Connelly*, 113 U. S., 31, in which he adds: "that no greater burdens should be laid upon one than are laid upon others in the same calling and condition."

From what has been said, it results that the legislation in question has not the sanction of the Constitution, and cannot be upheld as within the competency of the law-making power to enact.

We have gone into this inquiry in order to settle the question of the validity of the statute in the application to the case before us, and because it will practically put an end to the litigation.

But for the defect in the special verdict we are compelled to direct that it be set aside for further proceedings in the Court below.

Reversed and special verdict set aside.