### G. C. FARTHING v. W. T. CARRINGTON.

*Practice—Controversy without Action—Matter of Public Interest—Hearing on Appeal—Conditional Sales and Mortgages, Validity of—Present Consideration—Pre-existing Debts—Construction of Statute.*

1. Where, under section 567 of *The Code*, a controversy is submitted which involves matters of great public concern and which is supported by an affidavit that a real case exists, and that the controversy is submitted in good faith to determine the rights of the parties, this Court will, upon appeal, determine the question of law thus raised, although the statement of facts is not full enough to render a judgment commanding or prohibiting a thing to be done. (AVERY and CLARK, J. J., *dissenting*.)

2. Under rules 10 and 12 this Court will, by consent of parties, receive printed argument, without regard to the number of the case on the docket or date of docketing the appeal, and in a cause directly involving a matter of great public interest, will assign an earlier place on the calendar or fix a day for its hearing.

3. Chapter 466, Acts of 1895, entitled "An act to regulate assignments and other conveyances of like nature in North Carolina," applies only to conveyances made to secure pre-existing debts and not to those executed to secure a debt growing out of the transaction itself and for a present consideration.

CONTROVERSY, submitted without action, heard before *Green, J.,* at March Term, 1895, of DURHAM Superior Court, and from the judgment rendered therein the plaintiff appealed. The appeal was docketed in this Court on the —— day of ——, 1895, after the cases from the 5th District had been disposed of, and by consent was heard on the —— day of April, 1895.

The submission to the Court below was as follows:

*To the Hon. L. L. Green, Judge Presiding at the March Term, 1895, of Durham Superior Court:*

G. C. Farthing, Hiram Jones and W. T. Carrington, being parties to a question in difference which might be the subject of a civil action, present a submission of the same to the Court for its decision, as follows:

All said parties are residents of Durham County, North Carolina, except Jones, who lives in Chatham. All parties agree that the case may be tried in Durham County.

On the 23d day of March, 1895, said Hiram Jones, desiring to borrow One Hundred Dollars, applied to W. T. Carrington, who loaned him said sum, which was attempted to be secured by the execution of a bond and mortgage, the following being a copy of the said mortgage:

I, Hiram Jones, of the County of Chatham, of the State

of North Carolina, am indebted to W. T. Carrington, of Durham County, in said State, in the sum of One Hundred Dollars for which he holds my note, to be due on the 1st day of November, A. D. 1895, and to secure the payment of the same I do hereby convey to him these articles of personal property, to-wit: One gray mare, name Mollie, known as the Gaston Foard mare, about 6 years old; one bay horse mule, name John, known as the Dick Atwater mule, about 5 years old; one red no-horned cow, about 6 years; one brindle-horned cow about 5 years old; 8 head of Hogs, now on my farm where I now live; 1 one-horse wagon; all my farming tools and geer; all the crop that I raise on my land or any other land that I tend in the year of 1895, such as wheat, corn, fodder, shucks, cotton, tobacco, &c., all free from any incumbrance or lien.

But on this Special Trust, That if I fail to pay said debt and interest on or before the 1st day of November, A. D. 1895, then he may sell said property, or so much thereof as may be necessary, by Public Auction, for Cash, first giving twenty days' notice at three public places, and apply the proceeds of such sale to the discharge of said debt and interest on the same and pay any surplus to me after all cost and attorney, &c.

Given under my hand and seal, this 23d day of March, A. D. 1895.

His<br>
HIRAM   X   JONES. (Seal).<br>
Mark.

Witness: J. J. Thaxton.

———

$100.00.          Durham, N. C., March 23, 1895.

On or before the 1st day of November, 1895, with interest from date at the rate of 8 per cent. per annum until paid, I promise to pay to the order of W. T. Carrington the

sum of One Hundred Dollars, for value received, and secured by chattel mortgage with even date with this note.

HIRAM $\overset{\text{His}}{\times}$ JONES. (SEAL.)
$\underset{\text{Mark.}}{}$

Witness: J. J. Thaxton.

That at the time of and before the execution of said mortgage, said Hiram Jones was indebted, by note, to G. C. Farthing, above named, in the sum of One Hundred Dollars, and said Farthing contends that said mortgage is void, for the reason that at the date of its execution he was a creditor of said Jones, as above stated. Whereas, said W. T. Carrington and Hiram Jones contend that neither the letter nor the spirit of the new anti-preference law embraces a case of this kind, in which one person, however much indebted at the time, creates a new debt and seeks to secure the same by mortgage, trust-deed or other security. And so desiring to save costs and trouble, they ask the decision of the Court upon the state of facts.

W. T. CARRINGTON.
HIRAM JONES.
G. C. FARTHING.

W. T. Carrington and G. C. Farthing, being duly sworn, states that this controversy is real, and the proceedings in good faith, to determine the rights of the parties.

W. T. CARRINGTON.

Sworn to and subscribed before me this April 1, 1895. Witness my hand and notarial seal.

CHAS. K. FAUCETTE,
Notary Public.

The following judgment was rendered:

" The Court having carefully read and considered this controversy without action, and after hearing argument of counsel, is of opinion, and so adjudges here and now,

that G. C. Farthing is not entitled to have the mortgage set out in the 'controversy submitted' declared void, but on the contrary, that said mortgage is as operative and effectual to pass title as it would have been prior to the passage of the anti-preference law by the recent legislature."

*Messrs. Boone & Boone*, for plaintiffs (appellants).
*Messrs. Fuller, Winston & Fuller*, for defendant.

MONTGOMERY, J.: This case was submitted to the court below under section 567 of *The Code*, and is here by appeal. This section of *The Code* answers a most excellent and useful purpose, in that it enables parties to have their questions in difference settled upon an agreed state of facts, without delay and without the cost of witnesses and a trial below. It disregards forms, as such, and the perplexities of pleadings. It requires only that, by affidavit, it shall be made to appear that a real case exists and that the controversy is submitted in good faith to determine the rights of the parties. One of the long standing rules of practice of this Court, number 10, provides that, "When by consent of counsel it is desired to submit a case without oral argument, the Court will receive printed arguments without regard to the number of the case on the docket, or date of docketing the appeal * * " Rule 13 amongst other things provides that the Court at the instance of a party to a cause directly involving a matter of great public interest, may assign an earlier place in the calendar or fix a day for the argument thereof which shall take precedence of other business. Under these rules we have felt it to be our duty to give an early hearing to the matters involved in the case before us, because of its public and general interest.

Upon examination of the proceeding before us, we are not satisfied that the facts are stated with sufficient full-

ness to entirely comply with the statute under which the matter is submitted; but the question of law which is submitted is presented with entire distinctness. And while ordinarily we might dismiss the proceeding because the case is not full enough as to its statement of facts, yet where a matter involves a great public interest, as does this matter, we have concluded to follow a late precedent of this Court—"Treat the case as in the nature of a submission of the controversy without a formal action." The precedent to which we refer will be found in Appendix "A," 114 N. C. Reports, and is as follows:

EXECUTIVE DEPARTMENT, March 29, 1894.

*To the Justices of the Supreme Court,*

SIRS: There exists a difference of opinion in the minds of the citizens of the State in regard to the term of office of a Judge elected by virtue of the provisions of section 25, Article IV, of the Constitution. The Attorney General, in an opinion filed at my request in this office, has advised me that every Judge elected under that section is elected for a full term of eight years. A considerable number of able members of the legal profession differ from him in his construction, and contend that a Judge so elected is only elected for the unexpired term of his predecessor in office. It is all important that the question should be determined by the highest Court in the State before the election of Judges shall take place in 1894. The importance of having this matter determined will be apparent from section 2689 of *The Code*, which is as follows: "When the election shall be finished the registrars and judges of election, in the presence of such of the electors as may choose to attend, shall open the boxes and count the ballots, reading aloud the names of the persons who shall appear on each ticket; and if there shall be two or more tickets rolled up

together, or any ticket shall contain the names of more persons than such elector has a right to vote for, or shall have a device upon it, in either of these cases such ticket shall not be numbered in taking the ballots, but shall be void, and the counting of votes shall be continued without adjournment until completed, and the result thereof declared." I am informed by the Attorney General·that this section has been construed by the Supreme Court in the case of *Deloatch* v. *Rogers*, 86 N. C. Reports, page 357, to mean that if a ticket contains the names of more persons than the elector has a right to vote for "it is not only inoperative as to the person improperly voted for, but as to all others for whom the elector may vote. The entire ballot for all is vitiated and must·be rejected from the count." This section has not been modified or repealed, and is a part of our present election law. By virtue of its provisions the whole Judicial ticket may be void if it should contain more names than the elector has a right to vote for. It will contain more names than the elector has a right to vote for if upon it is printed or written the name of a candidate for the office of Judge. when the term of such office will not have expired by January 1, 1895. It is manifest that this result will occur if the Attorney General's opinion contains a correct construction of Section 25, Art. IV, of the Constitution, and the electors of the State vote for Judges upon a ticket printed or written in accordance with the opposite construction. In view of the importance of determining the doubt prevailing upon the subject I respectfully request you to indicate what is your construction of the Constitutional provisions relating thereto.

I have the honor to be,

Very respectfully yours,

(Signed)                          ELIAS CARR, Governor.

116—21

FARTHING *v.* CARRINGTON.

RALEIGH, N. C., April 3, 1894.

To THE GOVERNOR:

Your communication of the 29th ult., requesting an opinion respecting the term of office of the Judges elected under the provisions of Section 25, Art. IV, of the Constitution, has been received and duly considered by us. We beg to assure your Excellency that we appreciate the importance of the question you have submitted for our consideration, and that we would at once give to it the thorough investigation which its solution would require if we could feel that, in expressing an opinion upon the subject, we were not overstepping the bounds which a proper sense of propriety prescribes for our action. As you are aware, Justices CLARK and MACRAE of this Court, and Judges Armfield, Bynum, Shuford, Whitaker and Boykin, of the Superior Court, have rights of property in offices which would be affected by a judicial determination of the question which you ask us to answer, and we find our perplexity increased by the fact that these gentlemen do not join your Excellency in requesting us to examine into the matter and express an opinion thereon. If we could be assured that such is their desire, we should feel less embarrassed in coming to a conclusion as to what action we should take in this emergency. We desire to state that Justices CLARK and MACRAE have deemed it proper that they should abstain from taking any part whatever in this correspondence.

We are yours very respectfully,

(Signed by)

SHEPHERD, C. J., and AVERY and BURWELL, JJ.

The Associate Justices of the Supreme Court and the Judges of the Superior Court, whose tenure of office was affected by the question involved, joined in a request that

the matter should be left to the decision of Chief Justice SHEPHERD and Associate Justices AVERY and BURWELL, and the following reply to the Governor contains their opinion :

RALEIGH, May 11, 1894.

To THE GOVERNOR,

DEAR SIR :—The communication from our associates and the Judges of the Superior Court which has been forwarded by your Excellency to us relieves us of embarrassment in complying with your request, since it is in the nature of a submission of the controversy in reference to their terms of office without a formal action," &c., &c. (Signed by)

SHEPHERD, C. J., and AVERY and BURWELL, JJ.

The controversy arises upon a state of facts which brings before us the construction of the Act of the General Assembly of March 13, 1895, entitled, " An Act to regulate Assignments and other conveyances of like nature in North Carolina." Section 1 is as follows : "That all conditional sales, assignments, mortgages or deeds in trust, which are executed to secure any debt, obligation, note or bond which gives preference to any creditor of the maker, shall be absolutely void as to existing creditors." The plaintiff contends that the mortgage in this case is void under the provisions of the act. We are of the opinion that the mortgage is valid, and that the Act is limited to conditional sales, assignments, mortgages and deeds in trust made to secure pre-existing debts and obligations, and that mortgages of the nature of the one before the Court, growing out of the transaction itself and executed for a present consideration, do not come within the operations of the statute referred to, and that it (the statute)·evidently refers to pre-existing debts, and was not intended to embrace transactions of this kind where the debt grows out of the

transaction itself and is for a present consideration. We are supported in this position by an opinion of this Court at its January Term, 1871, delivered by Chief Justice PEARSON in the case of *McKay* v. *Gilliam*, 65 N. C., 130, construing the Act of 1861, Ch. 4, Sec. 12, which Act is substantially like the one now under consideration. The same principle of construction is also recognized in *Reeves* v. *Cole*, 93 N. C., 90, although that case arose on the construction of the statute concerning agricultural supplies. However, after deciding the point raised in that case, Chief Justice SMITH, for the Court, further said: "A similar method of construction was pursued in ascertaining the meaning and giving effect to a section in the Act of September 11, 1861, which declared that "all deeds. of trust and mortgages hereafter made and judgments confessed to secure debts shall be void as to creditors" unless providing for the payment *pro rata* of all the debts and liabilities of the maker. It was held in *McKay* v. *Gilliam*, *supra*, that, notwithstanding the broad terms of the act, its purpose was "to take from debtors the right to give preference to some creditors to the exclusion of others," and its operation was confined to pre-existing debts and did not include a loan contracted at the time of the execution of the deed and secured by it." We are therefore further of the opinion that the act before us is intended only to prevent a preference in favor of pre-existing creditors in the cases specified in the Act itself. The appellant will pay the costs of this proceeding.

CLARK, J. (concurring in the result): As the Court holds that the question of the construction of the Act is properly raised. by the record, I express my concurrence in the opinion that the Act only applies to "assignments and other conveyances of like nature" as is stated in the title,

and forbids preferences being given by such to existing creditors, and that it has no application to mortgages, crop liens or other conveyances which may be executed to secure a debt or loan created at the same time with the execution of such conveyance, nor where the conveyance is executed to secure advances thereafter to be made. *McKay* v. *Gilliam*, 65 N. C., 130. But, I regret I cannot concur with the majority of the Court that the question is properly before us in this poceeding. The submission of a "controversy without action" under *The Code*, Section 567, is simply an inexpensive and prompt proceeding to obtain the decision of the Court as to the rights of the parties in a matter where the facts are not disputed. It dispenses with summons and pleadings, and can be submitted to the *Judge at Chambers* as well as at Term. But it is not intended as a mode of propounding queries to the Court to settle abstract questions of law when no judgment can be rendered directing the defendant to do or not to do some particular act. *McKethan* v. *Ray*, 71 N. C., 165; *Little* v. *Thorne*, 93 N. C., 69; *Millikan* v. *Fox*, 84 N. C., 107. It is a substitute for a civil action and must state facts sufficient to constitute a cause of action and upon which the Court could have rendered a judgment if presented by complaint and demurrer. The question here sought to be decided could of course be presented in this manner of proceeding, but only upon sufficient facts stated. In the present case all the facts agreed are that Carrington, being indebted to the plaintiff, executed a mortgage to his co-defendant to secure a loan made at the time of the execution of the mortgage, and the plaintiff asks a decree that such mortgage be declared void as to him. Suppose the plaintiff had been correct in alleging that the mortgage was void, does the bare fact that a debtor executes a void mortgage entitle any creditor to obtain a decree that the mort-

gage is void? How is he hurt by it? The creditor, whose debt has not been reduced to judgment, has no lien on any particular land of the debtor. He has no ground even to ask that the mortgage be removed as a cloud on his title. There is no allegation or agreement here that the defendant Carrington has included in this mortgage, property above his homestead, which would otherwise have been liable to execution for the plaintiff's debt and that the defendant has none other property liable to the plaintiff's execution. Nor is it averred that the plaintiff has judgment and execution, and if he had, no reason is shown why he could not sell under it and buy the property embraced in the alleged mortgage, treating it as void. It does not appear even that the mortgage has been registered. It is true the affidavit sets out that this is a *bona fide* action, but it does not appear that the plaintiff has suffered or will suffer any detriment, nor that the courts can render him any aid. Indeed, on the facts agreed there is no judgment that the Court could render, unless it is that of passing upon the abstract question of the construction of the Act. Nor can I concur that the response of the Court (114 N. C., 923) to the inquiry of the Governor as to the tenure of Judicial office is a precedent in this case which concerns merely the rights of parties litigant in a civil action of a private nature.

AVERY, J. (dissenting): The statute (*Code*, Sec. 567) was enacted in order (said PEARSON, C. J., in *McKethan* v. *Ray*, 71 N. C., 165) "to dispense with the formality of summons, complaint and answer." It would manifestly lead to absurdity to hold that the "controversy without action" was intended to include any other than a legal controversy, if the statute did not relieve us of discussing the general principle by declaring in plain terms that it must

be between "parties to a question in difference, which might be the subject of a civil action." It follows necessarily that before the Court can consider such a proceeding it must be satisfied from the statement that a cause of action exists and this can only appear when from the sworn statement, however informally or inartistically drawn, the Court can gather facts sufficient to constitute "the subject of a civil action." Hence it has been held that where the "case containing the facts" does not show that the Court has jurisdiction, the proposed controversy must be dismissed. *Little* v. *Thorne*, 93 N. C., 69. Following numberless precedents, beginning with *Tucker* v. *Baker*, 86 N. C., 1, this Court has held during the present term in the case of *Webb* v. *Hicks*, Justice FURCHES delivering the opinion of the Court, that where facts cannot be gathered from the whole complaint that would, if true, entitle a plaintiff to recover, the action must be dismissed. *Lassiter* v. *Roper*, 114 N. C., 17. In the case at bar, it is set forth in the sworn statement that Hiram Jones, one of the parties, borrowed one hundred dollars from another party, W. T. Carrington, on the 23d of March, 1895.

The mortgage, with the probate and certificate of registration is set forth in full, and then follows the portion of the affidavit upon which the status of the case in Court depends, which is as follows :

"That at the time of and before the execution of said mortgage, said Hiram Jones was indebted, by note, to G. C. Farthing, above named, in the sum of One Hundred Dollars, and said Farthing contends that said mortgage is void, for the reason that at the date of its execution he was a creditor of said Jones, as above stated. Whereas, said W. T. Carrington and Hiram Jones contend that neither the letter nor the spirit of the new anti-preference law embraces a case of this kind, in which one person, however much

indebted at the time, creates a new debt and seeks to secure the same by mortgage, trust-deed or other security. And so desiring to save costs and trouble they ask the decision of the Court upon the state of facts.

W. T. CARRINGTON,
HIRAM JONES,
G. C. FARTHING.

"W. T. Carrington and G. C. Farthing, being duly sworn, state that this controversy is real, and the proceedings in good faith, to determine the rights of the parties.

W. T. CARRINGTON.

"Sworn to and subscribed before me this April 1, 1895.
"Witness my hand and notarial seal.

CHAS. K. FAUCETTE,
Notary Public."

The Act of March 13th, 1895, provides that "All conditional sales, mortgages or deeds in trust, which are executed to secure any debt, obligation, note or bond which gives preference to any creditor of the maker, shall be absolutely void *as to existing creditors.*" The Statute of 13th Elizabeth (*Code*, Sec. 1545) declared all conveyances executed "to delay, hinder and defraud creditors and others of their just and lawful actions, etc., (only as to that person, his heirs, etc.) to be utterly void and of no effect." Before the enactment of that statute it was necessary to invoke the aid of a court of equity to have a deed declared void for fraud, and, where by that or any other statute deeds are pronounced void as against creditors, in order to secure a formal declaration of their invalidity the moving party must ask relief that would have been administered formerly solely in a court of equity.

It does not appear that the creditor Farthing has sued upon the note due him, or that, if he had obtained judgment and issued execution thereon, he could not have realized his debt by the sale of other property. Unless the creditor has the right, upon the state of facts presented, to demand a formal declaration of the Court that the mortgage is void, no cause of action is stated, upon which he can demand any judgment whatever. *Southerland* v. *Harper*, 83 N. C., 200. Farthing .has shown no shadow of a claim to either the specific personal property or the land covered by the mortgage to Carrington, and there is not the slightest ground, therefore, for invoking the aid of the Court to remove a cloud from property to which he has shown no apparent right or title. *Browning* v. *Lavender*, 104 N. C., 69 : *Peacock* v. *Stott*, *Ibid*, 154. "A cause of action is generally held to be a union of the right of the plaintiff and its infringement by the defendant." 1 Enc. of Pl. & Pr., p. 116. The two elements are the right of the plaintiff and omission of duty or wrong on the part of the defendant. *Hayes* v. *Clinkscales*, 9 S. C., 441. Here, the only right shown to · be in Farthing, in whose favor an attempt is made to state a cause of action if any exists, is that to sue for and recover the sum of one hundred dollars due him, but there. is an utter failure to indicate how the mortgage, without further explanation, interferes with that right. There must be an allegation of a breach or of a neglect of duty and a damage resulting, in order to properly constitute the suit in Court. COOLEY, J., in *Post* v. *Campam*, 42 Mich., 96. "The Codes of Civil Procedure create no new causes of action. Rights are entirely independent of remedies. Whatever was a cause of action at law or a ground of relief in equity before Codes, is now remediable in a civil action, and whatever was remediless

before is now remediless under the Codes.    1 Enc. of Pl. & Pr., p. 145."

There must be some limit to the exercise of jurisdiction under section 567.    It is well settled that a respectful letter from the learned members of the bar, who represent the parties to this proceeding, asking the Court to advise them as to some controversy that had not, but might in the near future arise, would give the subject matter of the communication no standing in the Superior Court or by appeal here.

I am at a loss to know how the line can be drawn so as to guide the legal profession and protect the Courts against being forced to spend their time in deciding speculative questions between the rule that the statement of facts sufficient to constitute a cause of action shall be regarded as an essential prerequisite to the consideration of a controversy submitted without action, and the loose practice of allowing affidavits suggesting that a question of vital interest to the public is about to arise, and requesting the Court to relieve the parties of the trouble and expense of proceeding in the prescribed way, and to give it a proper status in Court.    I cannot concur with my brethren in the view that the letter of advice to the head of a co-ordinate branch of the Government (114 N. C., 925) is a precedent for entertaining and deciding this case.    There, the Court followed a former precedent in advising a co-ordinate department (the Legislature) about a matter that confronted it at the moment, and involved a grave Consitutional question upon which that department was called upon to act immediately.    There, the Court gave advice in order to point out the line of duty which was prescribed by the Constitution, and it was not necessary to render a jugdment.    Here, we must either render a judgment or dismiss the case for want of jurisdiction; there is no

middle ground.  If we have no jurisdiction, as the modi-
fied opinion of the Court seems to concede, then our judg-
ment is a nullity.  It is familiar learning that a judgment,
where the Court has no jurisdiction, is not conclusive.  It
seems to me that, where it is conceded that a case is *coram
non judice*, the Court can render no judgment, and it is
manifestly our duty to dismiss, unless we mean to hold
that any two private citizens have the same right to ask
for advice about their differences that the Legislature or
the Governor has to invoke our aid in acting upon a grave
Constitutional question upon which immediate action is
inevitable.  To this proposition I cannot give my assent,
and in my view of the case I cannot concur with my
brethren without assenting to it.

The letter to the Governor which is referred to was not
an adjudication as to the rights of the Judicial officers
whose terms were in question.  But, feeling that they would
voluntarily accept the advice as decisive, the Court simply
endeavored to exhibit a proper appreciation of the rights
of the Judges and at the same time to show courtesy to the
Chief Executive of the State that had been considered due
both departments when similar requests had been theretofore
made.  It has never been once suggested that the frequent
designation of actions for possession, since feigned actions
and forms of action were abolished in 1868, as in the nature
of actions of ejectment, warrants this Court in entertaining
a suit begun by declaration instead of by summons, and
thus disregarding the requirement of the statute (*Code*,
Sec. 161); I see no more reason for attaching greater signifi-
cance to the expression " in the nature of a controversy
without action."  I cannot concur in the view that statutes,
enacted in derogation of general law and heretofore con-
strued strictly by this Court, shall be deemed modified as a
mere inference from the use of such illustrations.  But the

FARTHING *v.* CARRINGTON.

judgment of the court below that Jones' mortgage is not void is, as I understand the opinion of the court, left undisturbed, and is allowed to conclude the parties, though the court had no jurisdiction to try it.

Whatever may be the magnitude of the question involved, I deem it my duty to refrain from the expression of an opinion upon it, just as it would be proper to decline to respond to a written request accompanied by a solemn affidavit and sent in an informal way by some other highly respectable citizens of the State. I therefore dissent from the opinion of a majority of the Court that there is a properly constituted case before us.

If the majority of the Court had ordered that the appeal be dismissed for want of jurisdiction, thus vacating the judgment below which will now remain conclusive on the parties, the question whether I should give expression to my opinion on the merits might have been considered, according to the precedents, one of propriety. But where the Court, as the conclusion deduced from an argument to sustain the jurisdiction, simply ordered that the appellant pay the costs, then with great deference to the views of others, it seems to me that my course should be dictated by a sense of duty rather than of propriety. When the letter of advice, referred to in the opinion of the Court, was sent to the Governor, it must be remembered that there was no judgment appealed from, the validity of which depended upon the opinion of the Court, and the letter concluded no one as to his rights. It subserved the purpose of pointing out to the Executive Department the method of conducting the approaching election, a matter upon which that department was required by law to take action forthwith.

FURCHES, J. (concurring in the opinion of the Court delivered by Justice MONTGOMERY): I regret that there is

any reason why any member of the Court should feel that he was not authorized in this proceeding to give his opinion as to the proper construction of the Act of March 13th, 1895, as we are bound to see from the proceeding before us (if we close our eyes to all other sources of information) that it involves a matter of great interest to the business of the state.

The main question, and the one intended to be presented for our consideration, is the construction of the Act of March 13th, 1895, and four members of the Court have given their opinion, construing this act to apply to pre-existing debts, at the time of making the mortgage or other security and not to debts made contemporaneous with and agreed at the time of their making, to be thus secured. The other member of the Court, for reasons which he assigns, declines to express any opinion as to the construction of the Act. Then I take it that the construction of the Act is settled, so far as the opinion of four of the Justices of this Court can settle a question.

But while this is so, two of the Justices are of the opinion that the question is not presented in such a way as to justify the Court in giving any opinion as to its construction, and this is the reason for my writing this opinion.

The majority of the Court were not inadvertent to the objections made by the minority, and for these reasons did not undertake to render a formal judgment, affirming or overruling the judgment of the court below but simply expressed their opinion as to the construction of the Act. And in doing this we thought we were fully warranted by the precedents of this Court and the matter of the tenure of the Judges, 114 N. C., 923, is cited in the opinion of the Court as authority for the action of the majority. The learned members of the Court, Chief Justice SHEPHERD and

Justices AVERY and BURWELL, who rendered the opinion in that matter, put it upon the ground that it was " in the nature of a submission of the controversy in reference to their terms of office, without a formal action." This seems to be authority for the action of the majority of the Court in this proceeding. But the minority say not, for the reason that it was in response to a letter from the Governor as to a grave constitutional question, in which the public was interested ; that it was not an adjudication as to the rights of the officers whose terms were in question, but the Court felt that they would voluntarily accept the advice as decisive.

It is true that the Governor's letter to the Court suggested an important question for its decision, and we think one proper for them to act upon ; but he, as *Governor,* had no interest in it. His election or term of office was in no way involved. He did not order the election or hold the election. These were provided for by the Legislature. He could not add to or take one day from the terms of the Judges, with or without the opinion of this Court. And it is conceded that the opinion of this Court in that proceeding could not do so. But the opinion was given because it involved a grave constitutional question in which the public was interested, and because the Court had reasons for thinking that the parties really interested wished the opinion of the Court and would be governed by it.

This was, as I have said, an important question and one, as I think, proper to be decided by this Court. But it was not necessary to the administration of the courts. It is most probable there would have been elections held for these offices without this opinion, and if there had not been and in this way a vacancy had occurred the Governor was authorized by the Constitution to fill it; so the administration of justice would have gone on.

But again, it is contended by the minority that Section 567 of *The Code* is only intended to do away with the formalities of pleading, and to properly constitute a case under this section, it ought to contain sufficient averments to constitute a cause of action upon which the Court could go to judgment. I agree to this proposition, but I do not agree that *Webb* v. *Hicks,* decided at this term, is in conflict with the action of the majority of the Court in this case. In *Webb* v. *Hicks, supra,* the court below held that the plaintiffs were not entitled to recover, and this Court, in reviewing the appeal of plaintiffs were of the opinion that plaintiffs' complaint did not state a cause of action, and " affirmed " the judgment of the court below. It is not in point in this case, as I think.

But admitting as I do that there should be sufficient averments to enable the Court to proceed to judgment, this does not prevent the Court from giving its opinion in a case of such importance as this. And I think the Court is sustained in so doing, not only by the case in 114 N. C., 923, *supra,* but also by such cases as the following :

In *McBryde* v. *Patterson,* 78 N. C., 412, which was a contest between children of the same mother, some legitimate and some illegitimate, as to property, this Court, SMITH, C. J., delivering the opinion, discusses and decides the case upon its merits, and then held that the appeal was prematurely taken and dismisses the appeal.

In *State* v. *Davine,* 98 N. C., 778, in a case, coming up by successive appeals from a justice's court to this Court, upon the construction of a statute changing the presumption of evidence, this Court fully discusses the case upon the merits and declared the act unconstitutional and void. SMITH, C. J., delivering the opinion of the Court says : "We have gone into the question in order to settle the question of the validity of the statute in its application to the case before

us, and because it will practically put an end to the litigation." The case was then dismissed for the reason that the special verdict appealed from was not sufficient to found a judgment upon.

In *Guilford Co. v. Ga. Co.*, 109 N. C., which was before this Court simply upon a motion for a *certiorari* as a substitute for an appeal, the Court discussed and decided the case upon its merits—CLARK, J., delivering the opinion of the Court, and then refused the motion of defendant for the *certiorari* to bring the case to this Court.

In *State v. Tyler*, 85 N. C., 569, a case involving the question as to whether a solicitor was entitled to a $4.00 or $10.00 tax fee, this Court went into a full dicussion of the case upon its merits—ASHE, J., delivering the opinion of the Court, and closing the opinion as follows: "But as the State has no right to appeal in this case and has no interest in the question, the case is dismissed."

In *Milling Co. v. Finley*, 110 N. C., 411, the Court, CLARK, J., delivering the opinion, discusses the case on its merits and sustains the judgment below, and then says the · appeal is premature and cannot be sustained.

In *State v. Wylde*, 110 N. C., 500, being an indictment for bigamy, the Court discusses and decides the case upon its merits, CLARK, J., delivering the opinion, and then dismisses the appeal upon the ground that the affidavit upon which defendant appealed was insufficient to bring the case to this Court.

In *State v. Lockyear*, 95 N. C., 633, which was an indictment for selling liquor by the Capital Club of the City of Raleigh, the Court thought it of sufficient public importance, SMITH, C. J., delivering the opinion, to discuss and decide the case upon its merits, in which he gives the following reason for deciding a case not properly before the Court: "The wish of the parties that it should be settled and the

law declared, so that it might be observed in its integrity," and then proceeded to dismiss the case because there was no judgment in the court below, and none could be pronounced by this Court.

There was no difficulty in understanding the point intended to be presented to the Court by this case. No one has complained of it on that account. Then I repeat, treating this case as in no better condition than it would have been in a regular action, with a complaint alleging all the facts contained in this submission, with a demurrer to the complaint, will not the cases cited above justify the Court in giving its opinion upon the merits of the controversy? If it was of sufficient importance to decide whether a solicitor was entitled to a four dollar fee or a ten dollar fee to induce the Court to decide the case upon its merits, though it was before the Court on the appeal of the State, which the Court say had no interest in the question and no right to appeal, is not the question presented by this case of sufficient importance to justify the Court in giving its opinion upon the construction of this Act? If the construction of an act of the Legislature changing the rule of evidence as in *Davis'* case, *supra*, was of sufficient importance to justify the Court to pass upon it and declare an act of the Legislature unconstitutional "because it will practically put an end to the litigation," is not the matter now before the Court, which must seriously affect the whole business interest of the State, sufficient to justify the Court in giving its opinion as to the construction of the Act of the 13th of March, 1895?

But it is contended these cases do not apply for the reason that, although the Court gave its opinion when it had no case properly constituted before it, the Court after giving the opinions in the cases referred to then dismissed the appeals; and as to whether this was more consistent

116—22

with the views of my brethren who differ with the majority, I will not pretend to say, as I am not dealing with that question. But it is said the Court should have reversed or affirmed the judgment below—that there is no middle ground. Did the Court in the cases cited above reverse or affirm the judgments below? But supposing this may not be considered an answer to this position—that the Court should have reversed or affirmed the judgment in the Court below—I wish to give my own answer to this proposition. It is contended by the minority that the case does not state facts sufficient to authorize a judgment, and the judgment pronounced thereon is a nullity. If they are correct in this position, then no judgment we could have pronounced here would have made it valid. There was no use in shooting at a dead duck. And if there is a sufficient statement of facts to authorize the judgment below, then their whole theory that the Court was wrong in passing upon the question fails and falls to the ground. Which horn do they take? But again, if the Court had the right to consider it and then dismiss it, as in Davis' case, in Taylor's case, in Lockyear's case, *supra*, or in the case of the *County of Guilford* v. *The Georgia Co.*, *supra*, when it was only before the Court on an application for a *certiorari* to bring it to this Court, did not the Court have the right to consider this case without dismissing it? Does not the greater include the less, whether it is called middle ground or not?

I have not undertaken to argue the construction of the Act as given by the Court. So far as I know, there is no difference of opinion as to this. I say, so far as I know, as I am not authorized to speak for Justice AVERY on this point. But I have only endeavored to show that the Court is justified by precedent in the action it has taken in this case.

But I will say, in passing from this case, that in my opinion the Act of the 13th of March, 1895, is so little like the statute of 13th Eliz. (*Code*, Sec. 1545) that it would hardly be safe to reason from the analogy of that statute to construe the Act of the 13th of March. The statute of Elizabeth does not avoid any conveyance, unless there is an intent to defraud or delay the payment of the creditors of the maker, and then such creditors must be *defrauded, hindered and delayed*, or the conveyance is valid. This statute, without regard to intent or as to whether any one is damaged or not, declares the conveyance utterly void, if the maker is indebted to any one else at the time of making the same.